In the United States District Court
for the District of Columbia

| | |
|---|---|
| Dr. Dipal Patel ) | |
|      1827 Bottlerush Way ) | |
|      North Port, Fl 34289 ) | |
| ) | |
|      Plaintiff ) | |
| ) | Civil Action No. |
| V. ) | REQUEST FOR A |
| ) | JURY TRIAL AS TO |
| Robert A. McDonald, In his Official Capacity ) | CLAIM I |
|      Secretary of the Department of ) | |
|      Veterans Affairs, Defendant ) | |
| And ) | |
| The Department of Veterans Affairs, ) | |
| ) | |
| ) | |
|      Jointly and Severally ) | |
|      Defendants ) | |
| ) | |
|      Both at: ) | |
|      810 Vermont Avenue, N.W. ) | |
|      Washington, D.C. 20420 ) | |

_____

## COMPLAINT FOR DAMAGES, DECLARATORY and INJUNCTIVE RELIEF

Plaintiff, Dr. Dipal Patel, MD, by and through her undersigned attorney, does hereby allege, based upon knowledge as to herself and information and belief as to all other matters, the following violations of her rights under the Constitution of the United States and the laws thereunder, including but not limited to the First Amendment, Fifth Amendment, and the Privacy Act [5 U.S.C. §552a, et seq.]:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction under U.S. Constitution First and Fifth

Amendments, the Privacy Act [5 U.S.C. §552a(g)(1)] and 28 U.S.C. §1331.

In addition to damages under the Privacy Act, this action seeks declaratory and

injunctive relief under 28 U.S.C. 2201-2202.

2.  Venue lies in this District pursuant to 28 U.S.C. §1391(e) and 5 U.S.C.

§552a(g)(5).

3.  The Secretary and Department are found in the District, do business in the

District and the administrative appellate portion of the activities of this matter are

undertaken by the Department's Office of General Counsel, which is found in this

District at 810 Vermont Avenue, N.W., Washington, D.C. 20420, and a substantial

part of events, acts and omissions giving rise to the claim occurred or are occurring

in the District and relevant records and documents under the Privacy Act are

maintained in the District.

## PARTIES

4.  Plaintiff, Dr. Dipal Patel, is an Internal Medicine Physician,

who resides in Florida.

5.  Dr. Patel is a citizen of the United States and of Indian origins.

6.  The Defendant Secretary is the chief officer of the Defendant Department of

Veteran Affairs and is being sued in his Official Capacity. The Department of

Veterans Affairs is an agency of the United States within the meaning of Privacy

Act 5 U.S.C. 5(5)(1) and is, by its Officials, officers, employees, and agents, in  the

possession and control of the records pertaining to Plaintiff Dr. Dipal Patel. Both

Defendants do business in the District and both are officially located and situated

in the District. The Defendant Secretary and Defendant Department of Veterans

Affairs are hereinafter, unless otherwise specified, known as Defendant

Department, VA, Defendant, or Defendants.

## BACKGROUND FACTS

7.  Plaintiff, Dr. Dipal Patel, was hired by the Department with an effective date

of January 17, 2001, as a Primary Care Physician (PCP).

8.  Dr. Patel is licensed in the State of Florida.

9.  Dr. Patel was employed by the Defendants at its Bay Pines Healthcare

    System, through its Medical Center in Bay Pines, Florida, and stationed at

    its Port Charlotte Clinic.

10. VA physicians, gain various appeal and procedural rights in their position after they undergo an initial period of probationary employment and become permanent VA employee physicians.

11. Dr. Patel went through an initial probationary period and became a permanent VA employee physician, with a status of a contractual nature. The VA employees even have a union contract.

12. Dr. Patel gained various appeal and procedural rights in her position after she underwent an initial period of probationary employment and became a permanent VA employee physician.

13.  Dr. Patel also gained various staff privileges at the VA as part of her employment credentialing process.

14. Staff privileges are contractual in nature.

15. While physician staff privileges and employment of physicians at the VA are not totally synonymous, for the purposes of this litigation, unless otherwise specified, the terms should be construed as such. Dr. Patel would not have had employment with the VA as an employed physician without having been credentialed with staff privileges. Furthermore, she would not have had her privileges at the VA unless she was employed by the VA. The VA provides procedures for granting and maintaining both employment and privileges.  The Medical Staff Executive Board [MSEB] of each Medical Center has the

responsibility to recommend to the Director of each the VA's individual Medical Centers as to the competency of professional, credentialed staff, such as Dr. Patel, under VAHCS Memorandum 516-12-00-060. This is critical for obtaining medical staff privileges and employment. This is critical for obtaining and maintaining consistency in the quality staff privileges and employment.

16. Dr. Patel gained various appeal and procedural rights as a permanent credentialed VA staff employee physician, as both an employee and as a licensed physician staff member.   Dr. Patel had certain procedural and appeal rights under various provisions of the VA's Handbook and Memoranda including but not limited to: VAHCS Memorandum 516-12-00-060 and VHA Handbook 1100.19.

17.  Dr. Patel was paid a salary and afforded other financial and professional benefits by the VA.

18. Dr. Patel had a legitimate expectation of continued employment and staff privileges by and at the VA.

19. Dr. Patel had a property interest and a liberty interest in her employment and staff privileges by and at the VA.

20. Dr. Patel's supervisor for most of the pertinent period of time was Dr. Walter F. Brander.

21. Dr. Patel generally had a higher case census than the other doctors at Port Charlotte.

22. Dr. Patel often had less support staff [R.N. and secretarial] than the other physicians at Port Charlotte.

23. This lack of adequate staffing for Dr. Patel had been a chronic condition for Dr. Patel.

24. Dr. Patel raised and complained of the lack of adequate staffing and the excessive patient census issue in general as it effected all physicians and their patients at the Port Charlotte VA Clinic and her status and patients in particular on a number of occasions with her then immediate supervisor, Dr. Brander and his superior, Dr. Ajay Dhawan, M.D. Additionally, her excessive patient census was beyond that of other primary care physicians [PCP] at her duty station, the VA Port Charlotte Clinic in Florida.

25. It was not a part of her job description to identify and report VA failures of VA staffing and patient census issues.

26. These verbal reports are of a protected First Amendment personal speech nature, reflecting upon issues of public concern. The issue of high patient census/caseloads of VA PCPs and the issue of inadequate support staff of VA PCPs are matters of public concern in that they relate to the efficiency and/or lack thereof by which the Department of Veterans Affairs treats and

cares for the Nation's veteran population. Additionally, the issue of Plaintiff, Dr. Patel's high patient census/caseloads in relation to her PCP colleagues and the issue of Plaintiff, Dr. Patel's, inadequate support staff in relation to her PCP colleagues are matters of public concern in that these adversely affect the efficiency by which the Department of Veterans Affairs treats and cares for the Nation's veteran population.

27. Due to her higher case load and lack of adequate support staff, Dr. Patel often had difficulties keeping her chart documentation current.

28. As a consequence of her lack of adequate support staffing, Dr. Patel entered her patient notes from her patient visits on her hard copy patient encounter sheets, kept in her office, until she was able to transfer them into her patients' electronic charts.

29. Dr. Patel was not ordered to cease this procedure.

30. Other physicians at Bay Pines followed a similar practice style.

31. Dr. Brander was aware of this procedure.

32. Her delay in entering her patient notes into the patients' electronic charts was due to chronic lack of staffing and excessive patient census issues which Dr. Patel reported to Dr. Brander.

33. When Dr. Patel rendered the services which were the initially basis for her proposed termination, Dr. Patel's team did not have a R.N. exclusively assigned to them as was the way it was supposed to be.

34. This lack of adequate staffing and excessive patient census required Dr. Patel to undertake added non-physician duties, which are not anticipated concerning an adequately staffed VA physician with an appropriate patient census.

35. In a May of 2009 review of Dr. Patel, the VA cited Dr. Patel for a failure of documentation but did not assert that it pertained to professional competency and/or conduct.

36. In a December of 2010 review of Dr. Patel, the VA cited Dr. Patel for a failure of documentation with fewer incidents but asserted that it related to professional competency and/or conduct.

37. The VA failed to afford Dr. Patel a peer review hearing of the underlying cases, asserted to be related to professional competency and/or conduct.

38. The VA failed to comply with its own protocols under VHA Handbook 1100.19 which treats a failure to properly document charts as a basis for administrative suspension. These failures to document charts are not normally treated as matters that relates to professional competency and/or conduct.

39. Dr. Patel's Proficiency Reports for these periods did not set out this administrative charting function as a Critical Element.

40. Throughout this time period, Dr. Patel was understaffed and had an excessive patient census. Her excessive patient census was generally beyond that of other primary care physicians [PCP] at her duty station, the VA Port Charlotte Clinic.

41. Throughout this time period, Dr. Patel raised the lack of adequate staffing issue and the excessive patient census issue on a number of occasions with her then immediate supervisor, Dr. Walter Brander and occasionally, with his superior, Dr. Ajay Dhawan, M.D.

42. On June 29, 2012, in spite of the foregoing, Dr. Brander make his recommendation to approve Dr. Patel's renewed privileges by officially certifying in writing her competency as to her professional performance and clinical judgment among other factors.

43. On July 11, 2012, in spite of the foregoing, Dr. Patel was awarded renewed privileges at the VA for a two year period.

44. Dr. Brander's chain of command approved the renewal of Dr. Patel's privileges.

45. By virtue of her renewal of Privileges and re-credentialing, Dr. Patel had continued legitimate expectations of employment and privilege credentialing at the VA.

46. By virtue of the renewal of Privileges and re-credentialing, Dr. Patel had continued legitimate property and liberty interests in her employment and privilege credentialing at the VA.

47. By September 20, 2012, the VA had three peer reviewers, review Dr. Patel's charts.

48. This review constituted either a focused professional practice evaluation [FPPE] or an ongoing professional practice evaluation [OPPE] under VAHCS Memorandum 516-12-00-060. Both are regulated by said VAHCS Memorandum in much the same way.

49. The reviewers recommend Dr. Patel's termination which was supported by and concurred in by Suzanne M Klinker, Director of Bay Pines VA Healthcare Systems.

50. Dr. Patel was not afforded an opportunity to present any information or documentation to these reviewers.

51. These reviewers had not been provided documentation maintained on Dr. Patel's patient encounter sheets that had not yet been transferred to the patient's electronic chart.

52. The reviewers findings were not forwarded to the Medical Staff Executive Board [MSEB] as provided under VAHCS Memorandum 516-12-00-060 [pg.3, b.(5)] for evaluating the results of her review.

53. Dr. Patel was not afforded "access to a fair hearing and appeal process as defined by the Medical Staff By-laws" as provided for under VAHCS Memorandum 516-12-00-060 [pg.7, c.(4)] nor was she afforded notice of an opportunity to do so.

54. On or about November 21, 2012, Dr. Patel was provided a written Proposed Notice of Discharge and Revocation of Clinical Privileges.

55. While this written Notice provided Dr. Patel an opportunity to provide a written and oral response to the Proposed Discharge and Revocation of Clinical Privileges, it did not provide her with an opportunity for a fair hearing and appeal process as provided for under VAHCS Memorandum 516-12-00-060 [c.(4); pgs. 6-7] nor did it provide that her submission would be sent to the Medical Staff Executive Board (MSEB) as provided for under VAHCS Memorandum 516-12-00-060 [b.(5); pg.3].

56. Dr. Patel's attorney wrote to Director Klinker on June 23, 2014, setting out numerous substantive and procedural failures on the part of the VA towards Dr. Patel.

57. Thereafter, Dr. Patel and her attorney met with Director Klinker and her staff.

58. Without having been afforded notice and an opportunity for a fair hearing, appeal, and review by the MSEB as provided under VA VAHCS Memorandum 516-12-00-060, Dr. Patel accepted a contract agreement denoted Last Chance Agreement [LCA].

59. The LCA is a contract providing for certain future rights and procedures for Dr. Patel and the waiver of certain prior breaches of Dr. Patel's rights by the Defendant Department. The Last Chance Agreement constituted a constitutionally protected property right of Dr. Patel.

60. The LCA constitutes a property right of Dr. Patel related to her employment and privileges with the Defendant Department.

61. The LCA provides for certain procedural rights of Dr. Patel related to her employment with the Defendant Department.

62. The LCA provides for certain specific identifiable waivers by Dr. Patel.

63. The LCA did not provide for waiver by Dr. Patel of future violations of Dr. Patel's rights under the LCA by the Defendant.

64. On July 12, 2013, Dr. Patel executed the LCA and on July 16, 2013, Director Klinker executed the LCA. Thereafter, Dr. Patel returned to rendering clinical services pursuant to the LCA.

65. Under the LCA, Dr. Patel was subject VA procedures under both Focused Professional Practice Evaluation [FPPE] and/or Ongoing Professional Practice Evaluation [OPPE].

66. Under the LCA [¶ f], Dr. Patel was entitled to the VA procedures under both Focused Professional Practice Evaluation [FPPE] and/or Ongoing Professional Practice Evaluation [OPPE], based upon which type of evaluation was being undertaken, as found in VAHCS Memorandum 516-12-00-060 (Oct. 2012).

67. From on or about August 14, 2013, to on or about September 6, 2013, Dr. Patel's medical services were preliminarily reviewed by Dr. Mattras under the VA's FPPE procedures [VAHCS Memorandum 516-12-00-060] and pursuant to the LCA [¶ f].

68. Dr. Mattras failed to provide Dr. Patel an opportunity to review his evaluation of her performance.

69. Dr. Mattras failed to afford Dr. Patel an opportunity to provide input as to his evaluation of her performance.

70. Dr. Mattras and the Defendant failed to comply with FPPE procedures [or OPPE for that matter] in that Dr. Mattras did not submit the documentation reviewed, as provided for under FPPE procedures, to the MSEB [VAHCS

Memorandum 516-12-00-060 (b.(5); pg.3)[1] for its initial findings[2] [through its FPPE/OPPE procedures] with the MSEB initial findings then being submitted directly to Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS) for a final decision, LCA [¶ f].

71. Dr. Mattras submitted his preliminary FPPE findings directly to Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS) without following procedures provided under FPPE/OPPE VA Memorandum 516-12-00-060 which calls for MSEB review [b.(5); pg.3 MSEB  (responsibility to consistently implement FPPE) and & pgs. 6-7, c(4) (medical staff fair hearing and appeal of FPPE)] for FPPE/OPPE reviews as called for in the LCA ¶f.

72. Dr. Mattras by passed the MSEB which is provided for under FPPE/OPPE procedures and invoked under LCA ¶f.

---

[1] "The MSEB will assure that every provider's FPPS and OPPE are consistently implemented in accordance with the criteria and requirements defined by the organized medical staff. The MSEB will ensure the minutes reflect adequate information to support the decision to maintain, revise, or ***revoke existing*** provider privileges…." (emphasis added)

[2] VA Memorandum 516-12-00-060 [b.(5); pg.3 MSEB  (responsibility to consistently implement FPPE) and & pgs. 6-7, c(4): "Any professional practice issues that have been identified during the FPPE or OPPE by the Service Chief along with recommendations for performance improvement will be referred to the MSEB for further review and consideration. …"  Dr. Patel's reviewer was not even the Service Chief but, rather, a new supervisor, Dr. Mattras.

73. Contrary to Dr. Mattras' false assertions on the evaluation forms, he did not review his findings with Dr. Patel as asserted by Dr. Mattras on his review forms.

74. Dr. Patel requested through an FOIA/PA request for documentation pertaining to Dr. Mattras' review.

75. The VA failed to provide any notes or documentation by Dr. Mattras as to his alleged consultations with Dr. Patel to support his false assertion on the review form of reviewing his finding with Dr. Patel.

76. Dr. Mattras only reviewed his findings with Dr. Patel on a relatively few, limited number of charts of all that he did review.

77. Dr. Mattras could not provide to either COS Dr. Thuriere or the MSEB his consultation notes with Dr. Patel for Dr. Patel's comments as to his review of her work because he took no notes from his very limited consultations with Dr. Patel as to the limited extent that they occurred and VA produced no such notes under the FOIA/PA as requested relating to Dr. Patel's responses to the Mattras' criticisms.

78. Dr. Patel was not afforded an opportunity to provide input to Dr. Mattras as to his review nor to Dr. Thuriere.

79. COS Dr. Thuriere and MSEB had not been provided any notes by Dr. Mattras of Dr. Patel's responses as to his limited consultation with her as to his review of her charts.

80. As to most all of the charts that Dr. Mattras reviewed, he did not consult with Dr. Patel concerning them and provided her no opportunity to provide her input to Dr. Thuriere, the agreed upon final decision-maker.

81. COS Dr. Thuriere did not receive any input from Dr. Patel concerning her charts that Dr. Mattras adversely reviewed.

82. Dr. Patel was afforded no opportunity to provide Dr. Thuriere any input, directly or indirectly, as to her charts and her services rendered that was reviewed by Dr. Mattras and which was the basis for Dr. Thuriere final decision to terminate Dr. Patel's employment and privileges and property rights thereunder and the decision to terminate Dr. Patel's contract and contract rights entitled "Last Chance Agreement" [hereinafter, LCA].

83. The VA failed to collect information to the greatest extent practicable directly from Dr. Patel when the information might result in adverse determinations about Dr. Patel's rights, benefits and privileges under the VA Medical Center's programs.

84. The VA failed to collect information to the greatest extent practicable directly from Dr. Patel concerning her medical service, work product and

explanations concerning her medical services so as to afford Dr. Thuriere

complete, accurate and relevant information upon which to base her decision

as to Dr. Patel's continued employment by the VA.

85. The VA failed to maintain all records which were to be used by the VA in

making its determinations about Dr. Patel with such accuracy, relevance,

timeliness, and completeness as is reasonably necessary to assure fairness to

Dr. Patel in its determination.

86. Dr. Patel sought and obtained an outside review of 6 sample charts

[redacting identifiers] that Bay Pines determined were in non-compliance.

87. Dr. Patel's outside review was undertaken by Florida Medical Association.

88. The Florida Medical Associations reviewer was Assistant Professor,

Department of Community Health and Family Medicine, Clerkship Director,

at the University of Florida by the name of Dr. Linda Manning.

89. This review established that Dr. Patel's documentation of the 6 charts

reviewed was excellent.

90. On or about September 13, 2013, Dr. Patel's employment and privileges

were terminated by the Department and her Last Chance Agreement was

also terminated.

91. On September 13, 2013, the Defendant documented in its written

termination notice to Dr. Patel that "On September 13, 2013, the Chief of

Staff conducted a review and made a final determination that your FPPE failed to meet recognized standards." This notice is placed in a physician's credentialing and personnel file.

92. Since this entry and Dr. Patel's termination, Dr. Patel has applied for on a number of occasions and been unable to gain employment as a physician, except where her husband practices and then it is very limited practice by virtue of being unable to obtain hospital privileges and almost no third party payer participation that would have been otherwise available but for Defendant stigmatizing, foreclosing and depriving Dr. Patel's freedom and liberty to take advantage of future employment opportunities and other future economic beneficial opportunities that would otherwise be available to her as a qualified physician.

93. Dr. Thuriere neither sought nor obtained any input from Dr. Patel, either directly or indirectly, for her review of Dr. Patel's FPPE and her violation or non-violation of her LCA.

94. The notice continued "Based upon non-adherence of your FPPE, you violated the LCA you signed. As a result, effective September 13, 2013, you are discharged from employment with Bay Pines VA Healthcare System, Bay Pines, Florida." This document is maintained by Defendant in Dr. Patel's credentialing and personnel file.

95. On or about September 21, 2013, Dr. Patel's Service Chief created a Provider Exit Review form which provided that she "Failed to meet generally accepted standards of practice as to raise reasonable concern for the safety of patients." This document is maintained by Defendant in Dr. Patel's credentialing and personnel file.

96. The Provider Exit Review form also provided an "MSEB Review Date" of September 18, 2013. This was five days after Dr. Patel had been terminated.

97. The FPPE process which was agreed to by the Defendant under the LCA affords a physician certain rights as provided for under VAHCS Memorandum 516-12-00-060 [including but not limited to: pg.3, b.(5) (responsibility to consistently implement FPPE) & pgs. 6-7, c(4) (medical staff fair hearing and appeal of FPPE)].

98. The Constitution affords an individual certain rights before a liberty or property right under a contract with the Defendant can be terminated and that includes an opportunity to present the individual's input to the decision-maker.

99. The Defendant failed to afford Dr. Patel an opportunity to provide input to the Chief of Staff, Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS), directly or through her subordinates. Dr. Patel sought to provide such input but was not afforded the opportunity.

100.   The Defendant failed to afford Dr. Patel an opportunity to provide input to Dr. Mattras who undertook the preliminary review of Dr. Patel's charts.

101.   Dr. Patel was denied this right to provide her input to the decision-maker by virtue of the process employed by Dr. Mattras and Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS) where neither provided Dr. Patel an opportunity to respond to Dr. Mattras' criticism of Dr. Patel's charts and provide her input to Dr. Thuriere.

102.   Prior to her employment and privilege termination, Dr. Mattras never provided his preliminary review of Dr. Patel's charts to the MSEB so as to permit it to undertake its functions under the FPPE process [VAHCS Memorandum 516-12-00-060].

103.   The Defendant failed to afford Dr. Patel an opportunity to provide input to the MESB so as to permit it to forward its initial review recommendation to the Chief of Staff , as provided under VAHCS Memorandum 516-12-00-060, and under the LCA's incorporation of the FPPE procedures (¶f).

104.   Defendant never afforded Dr. Patel a MSEB due process hearing concerning her privileges at Bay Pines.

105.   The termination of Dr. Patel's employment was in violation of provisions of her LCA.

106. The Defendant materially breached its obligations under the LCA and in effect rescinded the LCA.

107. By virtue of the Defendant's breach of its LCA contract with Dr. Patel and its rescission of said contract, Defendant lost its rights and benefits under the LCA.

108. On or about June 23, 2014, Dr. Patel sought from Defendant, at Bay Pines, correction and amendment of her records based upon the Defendant's various violations of Dr. Patel's rights the Privacy Act.

109. On or about July 18, 2014, the Defendant at its Bay Pines Medical Center denied this request to correct and amend, Dr. Patel's records under the Privacy Act.

110. On or about June 23, 2015, Dr. Patel filed an administrative appeal with Defendant at its 810 Vermont Ave., NW, Washington D.C. office, seeking correction and amendment of her records based upon the Defendant's various violation of Dr. Patel's rights under the Privacy Act.

111. On August 31, 2015, the VA's Office of General Counsel [GC] denied Dr. Patel's Privacy Act Request to Correct her record and upon review of the record in Washington D.C., the GC did affirm, ratify, approved, endorse, confirm and effectuate upon behalf of the VA the illegal imposition of termination upon Dr. Patel with all of the VA failures and defects

identified in Dr. Patel's Privacy Act Request and the continued

maintenance within the VA system of Records of the illegal records.

112.  The Defendant has not yet corrected Dr. Patel's record under the Privacy

Act.

113.  Dr. Patel's rights under the Privacy Act were specifically not waived nor

mentioned in the LCA.

114.  Defendant violated Dr. Patel's rights under the Privacy Act as previously

specified herein, under the First Amendment of the Constitution, and under

the Fifth Amendment Due Process Clause as to her Property and Liberty

interests.

## CLAIM I
## PRIVACY ACT VIOLATION

1.  – 114. Plaintiff realleges and incorporates paragraphs 1 through 114 of this

complaint as if completely set forth herein.

115.  Beginning on or about August 14, 2013, and continuing to the present,

Defendant did fail to collect information to the greatest extent practicable

directly from Dr. Patel when the information pertained to the quality of

care that Dr. Patel rendered to her patients and this information might

result in an adverse determination about Dr. Patel's rights, benefits and

privileges under the Defendant's programs in violation of 5 U.S.C.

§552a(e)(2).

116. On or about August 14, 2013, and continuing to the present, Defendant did

fail to maintain in its records only such information about Dr. Patel as is

relevant and necessary to accomplish a purpose of the VA required to be

accomplished by Statute and Executive Order of the President, in violation

of 5 U.S.C. §552a(e)(1) ; to wit, the maintenance and termination of Dr.

Patel's VA employment and medical privileges as set out herein.

117. On or about August 14, 2013, and continuing to the present, Defendant did

fail to maintain Dr. Patel's  records with having made reasonable efforts to

assure that the records are accurate, complete, timely and relevant for

agency purposes.

118. On or about August 14, 2013, and continuing to the present, the Defendant

did fail and continues to fail to maintain all records which are and were

used by the Defendant in making determinations about Dr. Patel with such

accuracy, relevance, timeliness, and completeness as is reasonably

necessary to assure fairness to the individual in the determination [5 U.S.C.

§ 552a(e)(5)].

119. On or about August 14, 2013, and continuing until the present, the VA

failed to collect information to the greatest extent practicable directly from

Dr. Patel when the information might result in adverse determinations

about Dr. Patel's rights, benefits and privileges under the VA Medical Center's programs; in violation of 5 USC §552a(e)(2).

120. On or about August 14, 2013, and continuing until the present, the VA failed to collect information to the greatest extent practicable directly from Dr. Patel concerning her medical service, work product and explanations concerning her medical services so as to afford Dr. Thuriere complete, accurate and relevant information upon which to base her decision as to Dr. Patel's continued employment by the VA.

121. On or about August 14, 2013, and continuing until the present, the VA failed to maintain all records which were to be used by the VA in making its determinations about Dr. Patel with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to Dr. Patel in its determinations relating to the qualifications, character, rights, opportunities of and benefits to Dr. Patel that might be made on the basis of such records and consequently a determination was and is made which is adverse to Dr. Patel as set out herein; in violation of 5 USC §552a(e )(5) and 5 USC §552a(e)(5) and 5 USC §552a(g)(1)(c).

122. The Defendant's acts and omissions charged herein were willful and intentional in violation of 5 USC §552a(g)(4) and the Defendant and the Defendant's agents and officers knew and should have known that its

actions were improper, unlawful and in violation of the Privacy Act 5 USC
§552a.

123.  Due to the foregoing acts and omissions as set out herein, on or about
August 14, 2013, and continuing until the present, the Defendant did
violate 5 USC §552a(g)(1)(A);  5 USC §552a(g)(1)(C); and 5 USC
§552a(g)(1)(D) and cause Dr. Patel to suffer substantial and grave actual
professional, financial and personal damages, including but not limited to
mental distress, emotional trauma, embarrassment, humiliation, loss of
income, loss to and jeopardizing of future professional, financial
opportunities and employment.

124.  Based upon the foregoing violations, the Dr. Patel is entitled to the relief
requested below.

## CLAIM II
## DEPRIVATION OF LIBERTY INTEREST WITHOUT DUE PROCESS

1– 114. Plaintiff realleges and incorporates paragraphs 1 through 114 of this
complaint as if completely set forth herein.

125.  Dr. Patel went through an initial probationary period and became a
permanent VA employee physician, with a status of a contractual nature.
The VA employees even have a union contract.

126. Dr. Patel gained various appeal and procedural rights in her position after she underwent an initial period of probationary employment and became a permanent VA employee physician.

127. Dr. Patel also gained various staff privileges at the VA as part of her employment credentialing process.

128. Staff privileges are contractual in nature.

129. While physician staff privileges and employment of physicians at the VA are not totally synonymous, for the purposes of this litigation, unless otherwise specified, the terms should be construed as such. Dr. Patel would not have had employment with the VA as an employed physician without having been credentialed with staff privileges. Furthermore, she would not have had her privileges at the VA unless she was employed by the VA. The VA provides procedures for granting and maintaining both employment and privileges.  The Medical Staff Executive Board [MSEB] of each Medical Center has the responsibility to recommend to the Director of each the VA's individual Medical Centers as to the competency of professional, credentialed staff, such as Dr. Patel, under VAHCS Memorandum 516-12-00-060. This is critical for obtaining medical staff privileges and employment. This is critical for obtaining and maintaining consistency in the quality staff privileges and employment.

130. Dr. Patel gained various appeal and procedural rights as a permanent credentialed VA staff employee physician, as both an employee and as a licensed physician staff member.   Dr. Patel had certain procedural and appeal rights under various provisions of the VA's Handbook and Memoranda including but not limited to: VAHCS Memorandum 516-12-00-060 and VHA Handbook 1100.19.

131. These various appeal and procedural rights under her employment and staff privileges constitute a liberty interest.

132. Dr. Patel was paid a salary and afforded other financial and professional benefits by the VA.

133. Dr. Patel had a legitimate expectation of continued employment and staff privileges by and at the VA.

134. Dr. Patel had a protected liberty interest and a protected property interest in her Employment, her LCA and staff privileges at the VA by virtue of: the various rights, procedures and processes set out in this complaint and the agency rights, processes and procedures cited herein.

135. By September 20, 2012, the VA had three peer reviewers, review Dr. Patel's charts.

136. This review constituted either a focused professional practice evaluation [FPPE] or an ongoing professional practice evaluation [OPPE] under

VAHCS Memorandum 516-12-00-060. Both are regulated by said VAHCS Memorandum in much the same way.

137. The reviewers recommend Dr. Patel's termination which was supported by and concurred in by Suzanne M Klinker, Director of Bay Pines VA Healthcare Systems.

138. Dr. Patel was not afforded an opportunity to present any information or documentation to these reviewers.

139. These reviewers had not been provided documentation maintained on Dr. Patel's patient encounter sheets that had not yet been transferred to the patient's electronic chart.

140. The reviewers findings were not forwarded to the Medical Staff Executive Board [MSEB] as provided under VAHCS Memorandum 516-12-00-060 [pg.3, b.(5)] for evaluating the results of her review.

141. Dr. Patel was not afforded "access to a fair hearing and appeal process as defined by the Medical Staff By-laws" as provided for under VAHCS Memorandum 516-12-00-060 [pg.7, c.(4)] nor was she afforded notice of an opportunity to do so.

142. On or about November 21, 2012, Dr. Patel was provided a written Proposed Notice of Discharge and Revocation of Clinical Privileges.

143.  While this written Notice provided Dr. Patel an opportunity to provide a written and oral response to the Proposed Discharge and Revocation of Clinical Privileges to the Director, Suzanne Klinker, who is not a physician, it did not provide her with an opportunity for a fair hearing and appeal process as provided for under VAHCS Memorandum 516-12-00-060 [c.(4); pgs. 6-7] nor did it provide that her submission would be sent to the Medical Staff Executive Board (MSEB) as provided for under VAHCS Memorandum 516-12-00-060 [b.(5); pg.3]. It did not afford Dr. Patel an opportunity to have the Medical Staff Executive Board "evaluate the results of" her FPPE … and have the MSEB "assure (her FPPE) are consistently implemented in accordance with the criteria and requirements defined by the organized medical staff."  VAHCS Memorandum 516-12-00-060 [3.b(5); pg. 3]

144.  This proposal termination was made without the benefit of Dr. Patel's input nor the input of the Medical Staff Executive Board, in violation of all of the rights to due process as specified in this complaint and in this claim.

145.  On or about July 12, 2013, without the benefit of the foregoing rights being honored by the Defendant, Dr. Patel entered into a Last Chance Agreement [LCA].

146. Under the LCA, Dr. Patel was subject VA procedures under both Focused Professional Practice Evaluation [FPPE] and/or Ongoing Professional Practice Evaluation [OPPE].

147. Under the LCA [¶ f], Dr. Patel was entitled to the VA procedures under both Focused Professional Practice Evaluation [FPPE] and/or Ongoing Professional Practice Evaluation [OPPE], based upon which type of evaluation was being undertaken, as found in VAHCS Memorandum 516-12-00-060 (Oct. 2012).

148. From on or about August 14, 2013, to on or about September 6, 2013, Dr. Patel's medical services were preliminarily reviewed by Dr. Mattras under the VA's FPPE procedures [VAHCS Memorandum 516-12-00-060] and pursuant to the LCA [¶ f].

149. Dr. Mattras failed to provide Dr. Patel an opportunity to review his evaluation of her performance.

150. Dr. Mattras failed to provide Dr. Patel an opportunity to provide input as to his evaluation of her performance.

151. Dr. Mattras and the Defendant failed to comply with FPPE procedures [or OPPE for that matter] in that Dr. Mattras did not submit the documentation reviewed, as provided for under FPPE procedures, to the MSEB [VAHCS

Memorandum 516-12-00-060 (b.(5); pg.3)[3] for its initial findings[4] [through its FPPE/OPPE procedures] with the MSEB initial findings then being submitted directly to Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS) for a final decision, LCA [¶ f].

152. Dr. Mattras submitted his preliminary FPPE findings directly to Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS) without following procedures provided under FPPE/OPPE VA Memorandum 516-12-00-060 which calls for MSEB review [b.(5); pg.3 MSEB  (responsibility to consistently implement FPPE) and & pgs. 6-7, c(4) (medical staff fair hearing and appeal of FPPE)] for FPPE/OPPE reviews as called for in the LCA ¶f.

153. Dr. Mattras by-passed the MESB which is provided for under FPPE/OPPE procedures and invoked under LCA ¶f.

---

[3] "The MSEB will assure that every provider's FPPS and OPPE are consistently implemented in accordance with the criteria and requirements defined by the organized medical staff. The MSEB will ensure the minutes reflect adequate information to support the decision to maintain, revise, or *revoke existing* provider privileges…." (emphasis added)

[4] VA Memorandum 516-12-00-060 [b.(5); pg.3 MSEB  (responsibility to consistently implement FPPE) and & pgs. 6-7, c(4): "Any professional practice issues that have been identified during the FPPE or OPPE by the Service Chief along with recommendations for performance improvement will be referred to the MSEB for further review and consideration. …"  Dr. Patel's reviewer was not even the Service Chief but, rather, a new supervisor, Dr. Mattras.

154. Contrary to Dr. Mattras' false assertions on the evaluation forms, he did not review his findings with Dr. Patel as asserted by Dr. Mattras on his review forms.

155. Dr. Mattras only reviewed his findings with Dr. Patel on a relatively few, limited number of charts of all that he did review.

156. Dr. Mattras could not provide to either COS Dr. Thuriere or the MSEB his consultation notes with Dr. Patel for Dr. Patel's comments as to his review of her work because he took no notes from his very limited consultations with Dr. Patel as to the limited extent that they occurred and VA produced no such notes under the FOIA/PA as requested relating to Dr. Patel's responses to the Mattras' criticisms.

157. Dr. Patel was not afforded an opportunity to provide input to Dr. Mattras as to his review nor to Dr. Thuriere.

158. COS Dr. Thuriere and MSEB had not been provided any notes by Dr. Mattras of Dr. Patel's responses as to his limited consultation with her as to his review of her charts.

159. As to most all of the charts that Dr. Mattras reviewed, he did not consult with Dr. Patel concerning them and provided her no opportunity to provide her input to Dr. Thuriere, the agreed upon final decision-maker.

160. COS Dr. Thuriere did not receive any input from Dr. Patel concerning her charts that Dr. Mattras adversely reviewed.

161. Dr. Patel was afforded no opportunity to provide Dr. Thuriere any input, directly or indirectly, as to her charts and her services rendered that was reviewed by Dr. Mattras and which was the basis for Dr. Thuriere final decision to terminate Dr. Patel's employment and privileges and property rights thereunder and the decision to terminate Dr. Patel's contract and contract rights entitled "Last Chance Agreement".

162. On or about September 13, 2013, Dr. Patel's employment and privileges were terminated by the Department and her Last Chance Agreement was also terminated.

163. On September 13, 2013, the Defendant documented in its written termination notice to Dr. Patel that "On September 13, 2013, the Chief of Staff conducted a review and made a final determination that your FPPE failed to meet recognized standards." This notice is placed in a physician's credentialing and personnel file.

164. Dr. Thuriere neither sought nor obtained any input from Dr. Patel, either directly or indirectly, for her review of Dr. Patel's FPPE and her violation or non-violation of her LCA.

165. The notice continued "Based upon non-adherence of your FPPE, you violated the LCA you signed. As a result, effective September 13, 2013, you are discharged from employment with Bay Pines VA Healthcare System, Bay Pines, Florida." This document is maintained by Defendant in Dr. Patel's credentialing and personnel file.

166. On or about September 21, 2013, Dr. Patel's Service Chief created a Provider Exit Review form which provided that she "Failed to meet generally accepted standards of practice as to raise reasonable concern for the safety of patients." This document is maintained by Defendant in Dr. Patel's credentialing and personnel file.

167. The Provider Exit Review form also provided an "MSEB Review Date" of September 18, 2013. This was five days after Dr. Patel had been terminated.

168. The FPPE process which was agreed to by the Defendant under the LCA affords a physician certain rights as provided for under VAHCS Memorandum 516-12-00-060 [including but not limited to: pg.3, b.(5) (responsibility to consistently implement FPPE) & pgs. 6-7, c(4) (medical staff fair hearing and appeal of FPPE)].

169. The Constitution affords an individual certain rights before a liberty or property right under a contract with the Defendant can be terminated and

that includes an opportunity to present the individual's input to the decision-maker.

170. The Defendant failed to afford Dr. Patel an opportunity to provide input to the Chief of Staff, Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS), directly or through her subordinates. Dr. Patel sought to provide such input but was not afforded the opportunity.

171. The Defendant failed to afford Dr. Patel an opportunity to provide input to Dr. Mattras who undertook the preliminary review of Dr. Patel's charts.

172. Additionally, Dr. Patel was denied the right to provide her input to the decision-maker by virtue of the process employed by Dr. Mattras and Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS) where neither provided Dr. Patel notice nor an opportunity to respond to Dr. Mattras' criticism of Dr. Patel's charts. Furthermore, Dr. Patel was provide no opportunity to provide input to Dr. Thuriere who was designated by Director Klinker as the decision-maker concerning Dr. Patel's continued employment and credentialing, even though Dr. Patel sought an opportunity to meet with Dr. Thuriere. Dr. Patel was even denied an opportunity to meet with her supervisor, Dr. David Massaro, Chief of Primary Care, when she sought the opportunity.

173. Prior to her employment and privilege termination, Dr. Mattras never provided his preliminary review of Dr. Patel's charts to Dr. Patel nor to the MESB so as to permit it to undertake its functions under the FPPE process [VAHCS Memorandum 516-12-00-060].

174. The Defendant failed to afford Dr. Patel an opportunity to provide input to the MESB so as to permit it to forward its initial review recommendation to the Chief of Staff , as provided under VAHCS Memorandum 516-12-00-060, and under the LCA's incorporation of the FPPE procedures (¶f).

175. Defendant never afforded Dr. Patel a MSEB due process hearing concerning her privileges at Bay Pines. Dr. Patel sought an opportunity to meet with Dr. Thuriere when she learned that Dr. Mattras had provided Dr. Thuriere his results but was denied that opportunity.

176. The termination of Dr. Patel's employment was in violation of provisions of her LCA.

177. The Defendant materially breached its obligations under the LCA and in effect rescinded the LCA.

178. By virtue of the Defendant's breach of its LCA contract with Dr. Patel and its rescission of said contract, Defendant lost its rights and benefits under the LCA.

179. The documentation and statements made and created by the Defendant pursuant to Dr. Patel's termination is defamatory and she was denied due process to correct these defamatory statements and documentation.

180. Dr. Patel has had to self-report to prospective employers, to third party payers with whom she has sought participation with for reimbursement of patients' services, and to hospitals from whom she sought privileges and she has been regularly denied [not always though] these opportunities with these parties because of her self-reports.

181. Dr. Patel has applied for on a number of occasions and been unable to gain employment as a physician, except where her husband practices and then it is very limited practice by virtue of being unable to obtain hospital privileges and few third party payer participation that would have been otherwise available but for Defendant stigmatizing, foreclosing and depriving Dr. Patel's freedom and liberty to take advantage of future employment opportunities and other future economic beneficial opportunities that would otherwise be available to her as a qualified physician.

182. Without due process, the Defendant's actions have stigmatized, foreclosed and deprived Dr. Patel's freedom and liberty to take advantage of future employment opportunities and other future economic beneficial

opportunities that would otherwise be available to her as a qualified physician.

183. Dr. Patel even attempted to obtain a position as a pharmaceutical representative and was unable to obtain such a position.

184. This stigma is of a continuing nature and arises from the foregoing official actions of the Defendant.

185. As a result of Dr. Patel's termination as it occurred without due process, with the defamatory documentation and statements created pursuant to the termination which has foreclosed her from effectively reentering the practice of medicine.

186. Dr. Patel's termination has worked a change in her status by automatically excluding her from employment as a primary care physician and it has broadly precluded her from continuing in her chosen career as a primary care physician.

187. Dr. Patel's termination has denigrated her professional competency and impugned her personal reputation in such a fashion as to effectively put a significant roadblock in her ability to obtain other employment.

188. Based upon Dr. Patel's credentialing privileges in her VA Medical Staff status and her rights and procedures pertaining thereto; based upon Dr. Patel's employment at the VA Medical Center and her rights and

procedures pertaining thereto; and based upon her Last Chance Agreement at the VA Medical Center and her rights and procedures pertaining thereto, Dr. Patel has a liberty interest at the Defendant VA of which she has been deprived without due process as a result of the totality of the acts and omissions of the Defendant and his agents as set out herein pertaining to the termination of Dr. Patel's employment position, credentialing status and LCA at Bay Pines.

189. The various employees of the Defendant named herein knew and should have known that it is a violation of law and Dr. Patel's rights to terminate Dr. Patel's employment, credentialing status and LCA status without due process and to put such defamatory statements and documentation in Dr. Patel's credentialing and personnel file without due process which they knew that she would have to share with potential future employers, hospitals, and third party payers.

190. The Defendant deprived Dr. Patel of her protected property and liberty interests and the Defendant did not afford Dr. Patel with constitutionally sufficient procedures.

191. These violations have caused Dr. Patel to suffer substantial and grave actual professional, financial and personal damages, including but not limited to mental distress, emotional trauma, embarrassment, humiliation,

loss of income, loss to and jeopardizing of future professional, financial

opportunities and employment.

192.  Based upon the foregoing violations, the Dr. Patel is entitled to the relief

requested below.

## CLAIM III
## DEPRIVATION OF PROPERTY INTEREST IN VIOLATION OF PROCEDURAL DUE PROCESS

1-114. Plaintiff realleges and incorporates paragraphs 1 through 114 of this

complaint as if completely set forth herein.

193.  Dr. Patel went through an initial probationary period and became a

permanent VA employee physician, with a status of a contractual nature.

The VA employees even have a union contract.

194.  Dr. Patel gained various appeal and procedural rights in her position after

she underwent an initial period of probationary employment and became a

permanent VA employee physician.

195.   Dr. Patel also gained various staff privileges at the VA as part of her

employment credentialing process.

196.  Staff privileges are contractual in nature.

197.  While physician staff privileges and employment of physicians at the VA

are not totally synonymous, for the purposes of this litigation, unless

otherwise specified, the terms should be construed as such. Dr. Patel would not have had employment with the VA as an employed physician without having been credentialed with staff privileges. Furthermore, she would not have had her privileges at the VA unless she was employed by the VA. The VA provides procedures for granting and maintaining both employment and privileges. The Medical Staff Executive Board [MSEB] of each Medical Center has the responsibility to recommend to the Director of each the VA's individual Medical Centers as to the competency of professional, credentialed staff, such as Dr. Patel, under VAHCS Memorandum 516-12-00-060. This is critical for obtaining medical staff privileges and employment. This is critical for obtaining and maintaining consistency in the quality staff privileges and employment.

198. Dr. Patel gained various appeal and procedural rights as a permanent credentialed VA staff employee physician, as both an employee and as a licensed physician staff member. Dr. Patel had certain procedural and appeal rights under various provisions of the VA's Handbook and Memoranda including but not limited to: VAHCS Memorandum 516-12-00-060 and VHA Handbook 1100.19.

199. Dr. Patel was paid a salary and afforded other financial and professional benefits by the VA.

200. Dr. Patel had a legitimate expectation of continued employment and staff privileges by and at the VA.

201. Dr. Patel's employment, staff privileges and Last Chance Agreement constitute property interests for Dr. Patel.

202. Dr. Patel had a protected liberty interest and a protected property interest in her Employment, her LCA and staff privileges at the VA by virtue of: the various rights, procedures and processes set out in this complaint and the agency rights, processes and procedures cited herein.

203. In a May of 2009 review of Dr. Patel, the VA cited Dr. Patel for a failure of documentation but did not assert that it pertained to professional competency and/or conduct.

204. In a December of 2010 review of Dr. Patel, the VA cited Dr. Patel for a failure of documentation with fewer incidents but asserted that it related to professional competency and/or conduct.

205. The VA failed to afford Dr. Patel a peer review hearing of the underlying cases, asserted to be related to professional competency and/or conduct.

206. The VA failed to comply with its own protocols under VHA Handbook 1100.19 which treats a failure to properly document charts as a basis for administrative suspension. These failures to document charts are not

normally treated as matters that relates to professional competency and/or conduct.

207. Dr. Patel's Proficiency Reports for these periods did not set out this administrative charting function as a Critical Element.

208. On June 29, 2012, in spite of the foregoing, Dr. Brander make his recommendation to approve Dr. Patel's renewed privileges by officially certifying in writing her competency as to her professional performance and clinical judgment among other factors.

209. On July 11, 2012, in spite of the foregoing, Dr. Patel was awarded renewed privileges at the VA for a two year period.

210. Dr. Brander's chain of command approved the renewal of Dr. Patel's privileges.

211. By virtue of her renewal of Privileges and re-credentialing, Dr. Patel had continued legitimate expectations of employment and privilege credentialing at the VA.

212. By virtue of the renewal of Privileges and re-credentialing, Dr. Patel had continued legitimate property interests in her employment and privilege credentialing at the VA and expectations of same.

213. By September 20, 2012, the VA had three peer reviewers, review Dr. Patel's charts.

214. This review constituted either a focused professional practice evaluation [FPPE] or an ongoing professional practice evaluation [OPPE] under VAHCS Memorandum 516-12-00-060. Both are regulated by said VAHCS Memorandum in much the same way.

215. The reviewers recommend Dr. Patel's termination which was supported by and concurred in by Suzanne M Klinker, Director of Bay Pines VA Healthcare Systems.

216. Dr. Patel was not afforded an opportunity to present any information or documentation to these reviewers.

217. These reviewers had not been provided documentation maintained on Dr. Patel's patient encounter sheets that had not yet been transferred to the patient's electronic chart.

218. The reviewers findings were not forwarded to the Medical Staff Executive Board [MSEB] as provided under VAHCS Memorandum 516-12-00-060 [pg.3, b.(5)] for evaluating the results of her review.

219. Dr. Patel was not afforded "access to a fair hearing and appeal process as defined by the Medical Staff By-laws" as provided for under VAHCS Memorandum 516-12-00-060 [pg.7, c.(4)] nor was she afforded notice of an opportunity to do so.

220. On or about November 21, 2012, Dr. Patel was provided a written Proposed Notice of Discharge and Revocation of Clinical Privileges.

221. While this written Notice provided Dr. Patel an opportunity to provide a written and oral response to the Proposed Discharge and Revocation of Clinical Privileges, it did not provide her with an opportunity for a fair hearing and appeal process as provided for under VAHCS Memorandum 516-12-00-060 [c.(4); pgs. 6-7] nor did it provide that her submission would be sent to the Medical Staff Executive Board (MSEB) as provided for under VAHCS Memorandum 516-12-00-060 [b.(5); pg.3].

222. Dr. Patel's attorney wrote to Director Klinker on June 23, 2014, setting out numerous substantive and procedural failures on the part of the VA towards Dr. Patel.

223. Thereafter, Dr. Patel and her attorney met with Director Klinker and her staff.

224. Without having been afforded notice and an opportunity for a fair hearing, appeal, and review by the MSEB as provided under VA VAHCS Memorandum 516-12-00-060, Dr. Patel accepted a contract agreement denoted Last Chance Agreement [LCA].

225. The LCA is a contract providing for certain future rights and procedures for Dr. Patel and the waiver of certain prior breaches of Dr. Patel's rights

by the Defendant Department. The Last Chance Agreement constituted a constitutionally protected property right of Dr. Patel.

226. The LCA constitutes a property right of Dr. Patel related to her employment and privileges with the Defendant Department.

227. The LCA provides for certain procedural rights of Dr. Patel related to her employment with the Defendant Department.

228. The LCA provided for certain specific identifiable waivers by Dr. Patel.

229. The LCA did not provide for waiver by Dr. Patel of future violations of Dr. Patel's rights under the LCA by the Defendant.

230. On July 12, 2013, Dr. Patel executed the LCA and on July 16, 2013, Director Klinker executed the LCA. Thereafter, Dr. Patel returned to rendering clinical services pursuant to the LCA.

231. Under the LCA, Dr. Patel was subject VA procedures under both Focused Professional Practice Evaluation [FPPE] and/or Ongoing Professional Practice Evaluation [OPPE].

232. Under the LCA [¶ f], Dr. Patel was entitled to the VA procedures under both Focused Professional Practice Evaluation [FPPE] and/or Ongoing Professional Practice Evaluation [OPPE], based upon which type of evaluation was being undertaken, as found in VAHCS Memorandum 516-12-00-060 (Oct. 2012).

233. From on or about August 14, 2013, to on or about September 6, 2013, Dr.

Patel's medical services were preliminarily reviewed by Dr. Mattras under

the VA's FPPE procedures [VAHCS Memorandum 516-12-00-060] and

pursuant to the LCA [¶ f].

234. Dr. Mattras failed to provide Dr. Patel an opportunity to review his

evaluation of her performance.

235. Except as to a couple of patient charts, Dr. Mattras failed to provide Dr.

Patel an opportunity to provide input as to his evaluation of her

performance.

236. Dr. Mattras and the Defendant failed to comply with FPPE procedures [or

OPPE for that matter] in that Dr. Mattras did not submit the documentation

reviewed, as provided for under FPPE procedures, to the MSEB [VAHCS

Memorandum 516-12-00-060 (b.(5); pg.3)[5] for its initial findings[6] [through

its FPPE/OPPE procedures] with the MSEB initial findings then being

---

[5] "The MSEB will assure that every provider's FPPS and OPPE are consistently implemented in accordance with the criteria and requirements defined by the organized medical staff. The MSEB will ensure the minutes reflect adequate information to support the decision to maintain, revise, or **revoke existing** provider privileges…." (emphasis added)
[6] VA Memorandum 516-12-00-060 [b.(5); pg.3 MSEB  (responsibility to consistently implement FPPE) and & pgs. 6-7, c(4): "Any professional practice issues that have been identified during the FPPE or OPPE by the Service Chief along with recommendations for performance improvement will be referred to the MSEB for further review and consideration. …"  Dr. Patel's reviewer was not even the Service Chief but, rather, a new supervisor, Dr. Mattras.

submitted directly to Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS) for a final decision, LCA [¶ f].

237.  Dr. Mattras submitted his preliminary FPPE findings directly to Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS) without following procedures provided under FPPE/OPPE VA Memorandum 516-12-00-060 which calls for MSEB review [b.(5); pg.3 MSEB  (responsibility to consistently implement FPPE) and & pgs. 6-7, c(4) (medical staff fair hearing and appeal of FPPE)] for FPPE/OPPE reviews as called for in the LCA ¶f.

238.  Dr. Mattras by-passed the MESB which is provided for under FPPE/OPPE procedures and invoked under LCA ¶f.

239.  Contrary to Dr. Mattras' false assertions on the evaluation forms, he did not review his findings with Dr. Patel as asserted by Dr. Mattras on his review forms.

240.  Dr. Mattras only reviewed his findings with Dr. Patel on a relatively few, limited number of charts of all that he did review.

241.  Dr. Mattras could not provide to either COS Dr. Thuriere or the MSEB his consultation notes with Dr. Patel for Dr. Patel's comments as to his review of her work because he took no notes from his very limited consultations with Dr. Patel as to the limited extent that they occurred and VA produced

no such notes under the FOIA/PA as requested relating to Dr. Patel's

responses to the Mattras' criticisms.

242. Dr. Patel was not afforded an opportunity to provide input to Dr. Mattras

as to his review nor to provide input to Dr. Thuriere.

243. COS Dr. Thuriere and MSEB had not been provided any notes by Dr.

Mattras of Dr. Patel's responses as to his limited consultation with her as to

his review of her charts.

244. As to most all of the charts that Dr. Mattras reviewed, he did not consult

with Dr. Patel concerning them and provided her no opportunity to provide

her input to Dr. Thuriere, the agreed upon final decision-maker.

245. COS Dr. Thuriere did not receive any input from Dr. Patel concerning her

charts that Dr. Mattras adversely reviewed, even though Dr. Patel sought to

provide same. Dr. Patel sought a meeting with Dr. Thuriere, when she

determined that Dr. Mattras provided his review to Dr. Thuriere, but Dr.

Patel was denied that meeting or any other opportunity to provide her input

to Dr. Thuriere.

246. Dr. Patel was afforded no opportunity to provide Dr. Thuriere any input,

directly or indirectly, as to her charts and her services rendered that was

reviewed by Dr. Mattras and which was the basis for Dr. Thuriere final

decision to terminate Dr. Patel's employment and privileges and property

rights thereunder and the decision to terminate Dr. Patel's employment

contract, privilege contract and contract rights entitled "Last Chance

Agreement". Dr. Thuriere had been designated by Director Klinker in the

LCA as the decision-maker.

247. On or about September 13, 2013, Dr. Patel's employment and privileges

were terminated by the Department and her Last Chance Agreement was

also terminated.

248. On September 13, 2013, the Defendant documented in its written

termination notice to Dr. Patel that "On September 13, 2013, the Chief of

Staff conducted a review and made a final determination that your FPPE

failed to meet recognized standards." This notice is placed in a physician's

credentialing and personnel file.

249. Dr. Thuriere neither sought nor obtained any input from Dr. Patel, either

directly or indirectly, for her review of Dr. Patel's FPPE and her violation

or non-violation of her LCA.

250. The notice continued "Based upon non-adherence of your FPPE, you

violated the LCA you signed. As a result, effective September 13, 2013,

you are discharged from employment with Bay Pines VA Healthcare

System, Bay Pines, Florida."  This document is maintained by Defendant

in Dr. Patel's credentialing and personnel file.

251. The FPPE process which was agreed to by the Defendant under the LCA affords a physician certain rights as provided for under VAHCS Memorandum 516-12-00-060 [including but not limited to: pg.3, b.(5) (responsibility to consistently implement FPPE) & pgs. 6-7, c(4) (medical staff fair hearing and appeal of FPPE)].

252. The Constitution affords an individual certain rights before a liberty or property right under a contract with the Defendant can be terminated and that includes an opportunity to present the individual's input to the decision-maker.

253. The Defendant failed to afford Dr. Patel an opportunity to provide input to the Chief of Staff, Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS), directly or through her subordinates. Dr. Patel sought to provide such input but was not afforded the opportunity.

254. The Defendant failed to afford Dr. Patel an opportunity to provide input to Dr. Mattras who undertook the preliminary review of Dr. Patel's charts.

255. Dr. Patel was denied this right to provide her input to the decision-maker by virtue of the process employed by Dr. Mattras and Dr. Dominique A. Thuriere, M.D., Chief of Staff (COS) where neither provided Dr. Patel an opportunity to respond to Dr. Mattras' criticism of Dr. Patel's charts and provide her input to Dr. Thuriere.

256.  Prior to her employment and privilege termination, Dr. Mattras never provided his preliminary review of Dr. Patel's charts to the MESB so as to permit it to undertake its functions under the FPPE process [VAHCS Memorandum 516-12-00-060].

257.  The Defendant failed to afford Dr. Patel an opportunity to provide input to the MESB so as to permit it to forward its initial review recommendation to the Chief of Staff , as provided under VAHCS Memorandum 516-12-00-060, and under the LCA's incorporation of the FPPE procedures (¶f).

258.  Defendant never afforded Dr. Patel a MSEB due process hearing concerning her privileges at Bay Pines.

259.  The termination of Dr. Patel's employment was in violation of provisions of her LCA.

260.  The Defendant materially breached its obligations under the LCA and in effect rescinded the LCA.

261.  By virtue of the Defendant's breach of its LCA contract with Dr. Patel and its rescission of said contract, Defendant lost its rights and benefits under the LCA.

262.  The termination of Dr. Patel's property right under her employment contract, staff privilege contract, and her LCA was without notice nor opportunity to be heard in violation of procedural due process.

263.  The various employees of Defendant named herein knew and should have known that it is a violation of law and Dr. Patel's rights to terminate Dr. Patel's employment, credentialing status and LCA status without due process and to put such defamatory statements and documentation in Dr. Patel's credentialing and personnel file without due process which they knew that she would have to share with potential future employers, hospitals, and third party payers.

264.  These violations have caused Dr. Patel to suffer substantial and grave actual professional, financial and personal damages, including but not limited to mental distress, emotional trauma, embarrassment, humiliation, loss of income, loss to and jeopardizing of future professional, financial opportunities and employment.

265.  Based upon the foregoing violations, the Dr. Patel is entitled to the relief requested below.

## CLAIM IV
## VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION (DEFENDANT'S RETALIATION AGAINST PLAINTIFF, A PUBLIC EMPLOYEE)

1– 114. Plaintiff re-alleges and incorporates paragraphs 1 through 114 of this Complaint as if completely set forth herein.

266.   Beginning on or about 2009 and continuing until the present,

the Defendant, as alleged above and herein, retaliated against the Plaintiff, a

U.S. citizen and a public employee, in violation of the First Amendment of

the U.S. Constitution, when Defendant took an administrative charting issue

(that is normally resolved via an administrative suspension until the charts

are made current) and converted same into a professional competency and/or

conduct issue, contrary to its own regulations, protocols, and procedures

[VA Handbook 1100.19;  6k(3)(e)3 Automatic Suspension of Privileges

(pgs. 47-48)] and without providing Plaintiff appropriate due process, all in

retaliation for Plaintiff having spoken as a citizen on a matter of public

concern, namely, by Plaintiff's (1) informing/ complaining to her immediate

supervisor, Dr. Brander, and his superior, Dr. Ajay Dhawan, about her high

patient census/caseload and her low support staff levels (R.N. and

secretarial) relative to her PCP colleagues; as well as by Dr. Patel's (2)

informing/complaining to Dr. Brander, and his superior, Dr. Ajay Dhawan,

generally, regarding her and her PCP colleagues high patient caseloads and

inadequate support staffing.

267.  Beginning on or about 2009 and continuing until the present, the

Defendant, as alleged above and herein, retaliated against the Plaintiff, a

U.S. citizen and a public employee, in violation of the First Amendment of

the U.S. Constitution, in retaliation for Plaintiff having spoken as a citizen on a matter of public concern, namely, by Plaintiff's (1) informing/complaining to her immediate supervisor, Dr. Brander, and his superior, Dr. Ajay Dhawan, about her high patient census/caseload and her low support staff levels (R.N. and secretarial) relative to her PCP colleagues; as well as by Dr. Patel's (2) informing/complaining to Dr. Brandor, and his superior, Dr. Ajay Dhawan, generally, regarding her and her PCP colleagues high patient caseloads and inadequate support staffing. Dr. Patel undertook her informing/complaining in a confidential matter which non-disruptive to the work environment.

268. It was not part of her job description to identify and report VA failures of VA staffing and patient census issues.

269. Plaintiff, Dr. Patel's interest as a citizen in commenting/speaking upon matters of public concern, deferentially viewed, outweighs the government's interest in promoting the efficiency of the public services it performs though its employees. Indeed, it was in the interest in promoting efficiency of the public service to have Dr. Patel's confidential comments.

270. Dr. Patel's high patient census/caseload and her low support staff levels and that of her colleagues at Bay Pines is a matter of public concern.

271. Plaintiff, Dr. Patel's speaking out (informing/complaining to Drs. Brander and Dr. Ajay Dhawan) on this matter of public concern was a substantial and motivating factor in causing Defendant's retaliatory and punitive acts against Plaintiff, Dr. Patel.

272. Defendant would not have retaliated against Plaintiff, Dr. Patel (i.e. Defendant would not have acted in a punitive manner against and/or would not have taken adverse actions against Plaintiff, Dr. Patel) in the absence of Plaintiff, Dr. Patel's speaking as a citizen on a matter of public concern.

273. On or about 2009 and continuing until the present, the Defendant did violate Dr. Patel's rights under First Amendment of the U.S. Constitution by the Defendant's retaliatory acts and omissions as cited herein.

274. The various employees of Defendant named herein knew and should have known that it is a violation of law and Dr. Patel's rights to terminate Dr. Patel's employment, credentialing status and LCA status without due process and to put such defamatory statements and documentation in Dr. Patel's credentialing and personnel file without due process which they knew that she would have to share with potential future employers, hospitals, and third party payers.

275. These violations have caused Dr. Patel to suffer substantial and grave actual professional, financial and personal damages, including but not

limited to mental distress, emotional trauma, embarrassment, humiliation, loss of income, loss to and jeopardizing of future professional, financial opportunities and employment.

276. Based upon the foregoing violations, the Dr. Patel is entitled to the relief requested below.

277. Defendant would not have retaliated against Plaintiff, Dr. Patel (i.e. Defendant would not have acted in a punitive manner against and/or would not have taken adverse actions against Plaintiff, Dr. Patel) in the absence of Plaintiff, Dr. Patel's speaking as a citizen on a matter of public concern.

278. On or about 2009 and continuing until the present, the Defendant did violate Dr. Patel's rights under First Amendment of the U.S. Constitution by the Defendant's retaliatory acts and omissions as cited throughout this complaint.

279. Defendant would not have retaliated against Dr. Patel (i.e. Defendant would not have acted in a punitive manner against and/or would not have taken adverse actions against Dr. Patel) in the absence of Dr. Patel's speaking as a citizen on a matter of public concern.

280. On or about 2009 and continuing until the present, the Defendant did violate Dr. Patel's rights under First Amendment of the U.S. Constitution by the Defendant's retaliatory acts and omissions as cited herein.

281. These violations have caused Dr. Patel to suffer substantial and grave actual professional, financial and personal damages, including but not limited to mental distress, emotional trauma, embarrassment, humiliation, loss of income, loss of and jeopardizing of future professional, financial opportunities and employment.

282.  Based upon the foregoing violations, Dr. Patel is entitled to the relief requested below.


WHEREFORE, Plaintiff Dr. Patel requests that the Court award her the following relief:

1)  As to Claim 1, we ask for actual damages (5 U.S.C. § 552a(g)(4)(A)) as to be determined at the time of trial (but no less than$1,000) and we request correction and modification of the record so as to preclude any implication and/or inference in the records that she was fired or terminated and to affirmatively insert in the records that she was not terminated or fired for any reason and that she was and is in good standing with the Veterans Administration; and we ask that corrective notice go out to any and all recipients of such prior adverse information;

2)  As to Claim 1, we further ask that Plaintiff Dr. Patel be awarded the costs of

the action together with reasonable attorney fees pursuant to 5 U.S.C. § 552a(g)(4)(B);

3) As to Claim 2, inasmuch as Dr. Patel suffered emotional and financial damages that cannot be financially compensated for by the Defendant named herein under this Claim and inasmuch as she has been deprived of her constitutional right of Procedural Due Process (liberty interest) we ask for injunctive and declaratory relief that all adverse references to Dr. Patel in the VA record be voided and that corrective notice go out to any and all recipients of prior adverse information. The adverse acts by Defendants and their negative effects on Plaintiff acts have occurred, are now occurring, and will continue to occur and there is no financial amount that could compensate for same under this Claim against this Defendant herein and, therefore, injunctive relief is the only relief available;

4) As to Claim 3, inasmuch as Dr. Patel suffered emotional and financial damages that cannot be financially compensated for under this Claim by the Defendant herein and inasmuch as she has been deprived of her constitutional right of Procedural Due Process (property interest), we ask for injunctive and declaratory relief that all adverse references to Dr. Patel in the VA record be voided and that corrective notice go out to any and all recipients of prior adverse information. The adverse acts by the Defendant

and their negative effects on Dr. Patel have occurred, are now occurring, and will continue to occur and there is no financial amount by the Defendant herein that could compensate for same and, therefore, injunctive relief is the only relief available;

5) As to Claim 4, inasmuch as Dr. Patel suffered emotional and financial damages that cannot be financially compensated for under this Claim and inasmuch as she has been deprived of her constitutional right of Freedom of Speech under the First Amendment (i.e. retaliation due to her commenting upon a matter of public concern), we ask for injunctive and declaratory relief that all adverse references to Dr. Patel in the VA record be voided and that corrective notice go out to any and all recipients of such adverse information. The adverse acts by Defendants and their negative effects on Plaintiff acts have occurred, are now occurring, and will continue to occur and there is no financial amount under this Claim that could compensate for same and, therefore, injunctive relief is the only relief available; and

6) Plaintiff respectfully requests that the Court Grant such other relief as the Court may deem just and proper.

**Date:** September 9, 2015          Respectfully Submitted,


                              /S/Kenneth J Haber
                              Kenneth Joel Haber, Esq.,
                              DC Bar Number # 324343
                              DC US District Court #324343
                              Counsel for Plaintiff, Dr. Patel, MD,
                              Fmr. AUSA, Fmr. Sr. Atty. OIG/HHS,
                              12705 Fernberry Ln, Suite A,
                              Boyds, MD 20841
                              Tel 301-670-0016
                              Fax 301-948-3091
                              kjhesq@haberslaw.com
                              Complaint: Patel v. Department of Veterans
                              Affairs

Plaintiff does hereby Request a jury trial as to Claim I